This is case number 4-13-07110, People of the State of Illinois v. Isaiah Stokes. Attorney Zeeb is here on behalf of the appellant. Attorney Brooks is here on behalf of the athlete. Mr. Zeeb, are you ready to proceed? All right, you may do so. Good morning, Your Honors, Counsel. May it please the Court. My name is Brett Zeeb from the State of Illinois Health Defender's Office and I represent Isaiah Stokes. I'm going to focus my argument this morning on Issue 1, but I'd be happy to answer any questions the Court may have on the other issues. To convict Isaiah Stokes of home invasion in this case, the State had to prove two things beyond a reasonable doubt. First, that Isaiah entered Ms. Janet Wentz' home without her authority, and second, that he did so with the intent to injure her. Isaiah gave a statement to the police and he testified at trial, and in both that statement and his trial testimony, he did admit to entering that trailer without authority, but he denied that he intended to injure Ms. Wentz. The main question for this Court is that when conflicting evidence is presented at trial regarding a required element of a Class X home invasion charge, and in particular where the defendant has pled not guilty and then testified in his own defense at trial denying that required element, is it reasonable for counsel to concede his client's guilt to that offense? And the answer to that question is no. No, because counsel did not subject the State's home invasion case to meaningful adversarial testing. He essentially handed the State a home invasion conviction on a silver platter. This was not a reasonable trial strategy by any means. Again, Isaiah testified he did not intend to cause an injury to Ms. Wentz. There was no weapon, there was no testimony of any hitting on behalf of the defendant. There was at least a chance that a trier of facts could look at his trial testimony, his statement, the evidence at trial, and conclude that the State failed to prove beyond a reasonable doubt that he committed a home invasion because he didn't intend to injure Ms. Wentz. Now the State argues that defense counsel here made a strategic decision to concede to the home invasion charge in an attempt to bolster Isaiah's credibility than to challenge the attempt's criminal sexual assault charge. Well, there's a couple big things wrong with that. First, is that Isaiah did not consent to that. Isaiah entered a not guilty plea. He testified at trial that he did not intend to injure Ms. Wentz. And there's nothing on the record that shows that he, in the meantime, then changed his mind about his testimony and decided to plead guilty. The judge didn't admonish him about his guilty plea rights. There's no Rule 402 admonishments here. And in particular, this court should be mindful of what happened the first time around. In his first trial, his attorney completely stipulated to all the evidence in the case, he was convicted of home invasion. He was sentenced to 20 years in prison on that charge, six years concurrent on the attempt of criminal sexual assault, a Class II. And the case was remanded because of counsel's ineffectiveness. So it's not like the counsel here was unaware of what the trial judge might have sentenced Isaiah to here when he conceded his guilt to that home invasion charge. It's a Class X offense. It's a big difference between that, a six to 30 year range of penalties in prison, versus a Class II attempt of criminal sexual assault where it's just three to seven. There's no strategic advantage. There's no possible benefit to Isaiah Stokes in that instance for his attorney to completely throw him under the bus. This court should apply the chronic decision here because, again, counsel did not subject the defense, the home invasion case, to meaningful adversarial testing. This is an adversarial system. If Mr. Stokes wanted to plead guilty to this offense, he would have actually not guilty. What about the way the decisions of courts holding that chronic only applies if counsel fails to contest any portion of the prosecution's case? If counsel amounts a partial offense, Strickland is the more appropriate test. What about that? Well here, counsel did not contest the home invasion charge. He did contest the attempt criminal sexual assault, but again, that's a Class II offense. That's a concurrent prison sentence. And again, the cases the state cites to argue that chronic should not apply, People V. United States, there, counsel did concede. In the Johnson case, the attorney conceded his client's guilt to murder, but then contested the felony murder counts and contested other counts, attempt murders and other things, specifically so he could avoid the death penalty for his client. So there's a real tangible benefit. His client won't die. And there, the appellate court also held that counsel's actions in conceding that offense didn't undermine the defendant's preferred defense. Here, again, there's no benefit to Mr. Stokes when his attorney concedes his guilt to the most serious offense he's charged with, the Class X felony, in which he knows he's going to get 20 years, because that's what happened the first time around. But you're asking for per se finding. And I'm not asking for per se finding. I'm asking for per se finding. So under Chronic and Johnson, the Illinois Supreme Court case, basically they're saying, we're going to restrict this per se finding where counsel doesn't defend on any basis. And in this case, he had defense on the second charge. Well, he had a defense on the second charge, but again, this is a unique case where the defense counsel is putting up a fight on, essentially, it's not a meaningless charge. It's a Class II offense. But again, the sentencing range is three to seven. It's a concurrent prison sentence. Right. But in Bell v. Cohn, they said, we're going to restrict Chronic. Right? So if you're here to argue that Chronic requires per se reversal, I think Bell v. Cohn in the Johnson case in the Illinois Supreme Court might throw some doubt on that argument. Well, I mean, if this court wants to apply Strickland, Mr. Stokes still should win under Strickland, because essentially, defense counsel did not, I mean, it's just different language in Strickland. The judge had no choice but to convict Isaiah of home invasion. Here, defense counsel is saying... What was the charge of home invasion? How did it read? That he entered Janet Wendt's trailer or home without her authority, and he intended to injure her by restricting her ability to breathe, putting the pillows over her face. That was the charge? Yes, the inability to breathe is the injury language in the charge. Information count one. Yeah, read it to me. Knowingly and without authority entered the dwelling place of Janet Wendt, located in Bloomington, Illinois. He remained within the dwelling place, and he knew that one or more persons were present. Intentionally caused injury of the inability to breathe to a person within Janet Wendt. So he intentionally caused injury while inside? Yes. Okay. And... That's the charge. Did he deny that he put the pillow over her head? He did not deny that he put the pillow over her head, but his statement to the police and his testimony was that he entered the trailer. He didn't say specifically why he did that. I mean, more information on the subject is in his statement. Well, his entry into the trailer wouldn't defeat that element, would it? If he said, I didn't intend to do anything when I entered the trailer, it wouldn't matter for the home and patient charge, would it? Well, that's my point, Your Honor, is that he testified that he did not intend to injure Ms. Wendt. I'm not being clear. Yeah. The charge you just read says, he knowingly and without authority entered the dwelling place of another, right? Right. And once inside, he intentionally harmed somebody. Right. And his statement to the police and his testimony was that once he was inside, he didn't intend to injure her. I see what you're saying. There's a difference between having the intent when you go in and developing the intent when you're inside the trailer after other events occur. Well, are you arguing like, you know, putting a pillow over someone's head and causing her breathing difficulties is a little different than, let's say, picking up a hammer and hitting somebody? For purposes of the scenario, let's assume inside he picked up a hammer and he hit this woman. That's pretty clear. Would your argument then be, well, I didn't intend to do that. It was just the spur of the moment and I did it and therefore I'm not guilty? No, Your Honor. We wouldn't be here if that's the case. Okay. Well, I suppose what I'm asking is, how does his claim that I didn't intend to of his doing what he did, putting a pillow over her face and causing her to have difficulty breathing. Maybe another way to put it is, why do we care that he said, I didn't intend to harm her? Because his intent is part of the information that a trier of facts will use to determine whether he intended to injure the victim. So the guy with the hammer says, I didn't intend to harm her. I just hit her with the hammer. It was just spur of the moment. That's much less convincing, Your Honor. Well, I suppose from the point of view of a defense attorney, why do you say, well, let's see, my client says, I didn't intend to harm her, but the evidence shows, and I guess he's not disputing, he put the pillow over her face and was causing her difficulty breathe. Isn't that true? Well, yes. I see where you're going, Your Honor, but there's an ocean of difference between those two scenarios. Mr. Stokes testified that he put the pillow over the victim's face, but not to injure her, but because he was afraid that she was going to scream, that neighbors were going to be alerted. In his words, she freaked out, he freaked out. There was no physical injuries to Ms. Wendt. He did not know that she had a heart condition. But given this, given all that, how does, isn't that, you take your victim as you find them. If she had died of a heart attack, this would be a murder. Because you don't care that, gee, I didn't know she had a heart attack. Doesn't matter. But why is it so unreasonable or improper, which is really what you're arguing for, a defense attorney to look at this and say, well, you know, I'm not going to be able to beat this charge. Maybe I can beat the other one. Because in that scenario, his client should have pled guilty to the home invasion. And if his client had hit a victim in the head with a hammer after breaking into her home, and he didn't intend to do that, or I didn't intend to do that, that's even more of a case where your client is likely to plead guilty. What if he doesn't plead guilty? You can't force him. He can't force him, so would the argument be the same? Well, gee, he shouldn't have conceded the point that he hurt her. Well, a pro forma defense is better than no defense at all. Well, he came up with a defense for the other charge. For the home invasion, that's the whole point of why we're here, Your Honor. Isaiah pled not guilty. He pled not guilty. He made a statement to the police, he testified at trial, and in both of those, the statement and in his testimony, he said that when he put the pillows over the victim's face, he was not intended to injure her. That's for the trier of fact to decide. It might not be the strongest argument. Is it proof beyond a reasonable doubt? I don't know. That's for a trier of fact to decide. It's not the attorney's rights. What happened to the attempt criminal sexual assault charge? He was convicted of it. Given the circumstances, why would it be inappropriate for a defense counsel to argue that that sounds like a stronger defense argument? He didn't intend to sexually assault her, even despite what he said, and all that, and figure out he's going to lose on home invasion. Because after all, if you're criterion, if you're right, whenever the defendant pleads not guilty, then automatically no defense attorney could ever concede anything. Would that be the case? Not concede anything. You can concede some things. Our position in this case is you can't concede to a Class X home invasion charge where you've pled not guilty and you've testified Go back to my hammer situation. in your own defense at your trial. He testifies, I didn't intend to hit this lady. To hit her with a hammer, I just lost. Essentially all the same things he said, but now we've got a hammer instead of a pillow over the face. Would it be similarly inappropriate for a defense counsel to say, well, to focus and say, well, yeah, he did that, but he didn't intend to sexually assault this lady and you should find him not guilty of that charge? Well, I think in either scenario, the defense counsel's duty, if his or her client has not pled guilty, has entered a not guilty plea, and then testified at his or her trial to a certain fact pattern, denying a key element of the offense, then the defense counsel has a duty to make some kind of pro forma argument at least as to why the evidence failed to prove his client guilty beyond a reasonable doubt. It might not be as convincing when it's hitting someone in the hammer versus putting a pillow over his head. But even in that case, he can't concede? No, he can't. Because our cases are distinguishable from the cases that the state cites. In those cases, there's a huge benefit to conceding guilt on a lesser offense. Here, if counsel had conceded guilt to the attempt to criminal sexual assault, then maybe we're not here. Because in that case, the counsel is conceding to, again, a Class II offense that runs concurrent. Well, could he have been given consecutive sentences in this case? No. Why not? It's attempt. What about the fact that he wouldn't have to register as a sex offender? That's a collateral consequence of the guilty fine. That's a pretty big one. It's not as big as being in prison for 22 years. Going back to my question, the consecutive sentences aren't required, but aren't they available within the judge's discretion? They could be, but again, let's go back to what happened in the first go-around after he was convicted after a stipulated bench trial. The defense counsel had a pretty good idea of what was going to happen when he conceded his client's guilt to home invasion. And it's possible that counsel had some sort of misapprehension about the elements of home invasion. In that case, it's ineffective assistance. And if he did know, again, his client's own testimony did not contain all the elements of the offense. And yet, counsel got up and said that they did. That's throwing his client under the bus. That's giving the state a conviction without any adversarial testing. And that's the whole point of our system. You're charged with an offense. You can plead guilty or not. When you don't plead guilty, it has to be an adversarial process. He testified. And then his counsel, without his client's consent, again, this is a 16-year-old kid at the time of the offense, he's already gone through one trial where his attorney was ineffective. And here again, it's the same thing, except without stipulations. It's in closing argument, where his attorney says, this statement contains all the elements of the offense of home invasion. Now, what's a trier of fact to do when a defendant's own counsel gets up and says that about his trial testimony and about his statement? Did his statement contain all of the elements? It did not. His statement to the police, what was missing? That he intended to injure Ms. Wendt inside the trailer. His story the whole time was, she freaked out, I freaked out, I didn't want her to scream, I didn't want to get caught. This is a 16-year-old kid. Of course, that doesn't excuse anything that he did. It was a serious offense. But the point being is that it was a trier of facts job to decide whether the state proved the home invasion. It wasn't the attorney's job to say, here judge, he's guilty of home invasion. A class X offense in which you sentenced him to 20 years in prison before. But he intentionally put the pillow on her face. Yes. And again, we're not saying we win, we're not saying that he would have been found not guilty beyond a reasonable doubt, we don't know. But that's not what we have to prove. We have to show the counsel that his representation was unreasonable. We have to show prejudice under scrutiny, right? We do, and we can, because the judge had no choice but to convict Isaiah after that. His own attorney is basically saying, this statement and this testimony is unbelievable. And we're giving up on that. And again... I'm not sure the court had no choice. Well, of course the court has a choice, but it didn't give him any real choice. When Isaiah's own attorney has done this. And again, the state has no convincing argument as to how somehow Isaiah's credibility is increased by his attorney admitting or conceding to the home invasion charge as opposed to the criminal sexual assault charge. Because he denied both. He denied an attempt to do both. Well, he admitted he entered the premises, he had no right to be in there, and he admitted putting a pillow over the face of the victim and straddling her in the back. This is true. But he didn't say, yeah, I put the pillow over her head because I wanted to kill her or I wanted to smother her or I wanted to make her pass out or I wanted to break her nose. And he denied saying that he wanted to specifically have sex with her. Is any of that necessary? To convict him? Well, he doesn't have to say those magic words, Your Honor, no. But again, I don't have to prove to you that he was innocent of the offense. Well, is it an arguing? Yeah, I put the pillow over her face and I caused the difficulty to breathe, but I didn't intend to do it. Is that your argument? No. Our argument is he did not intend to injure her. When he was putting the pillow over her face, it wasn't to injure her, it was to quiet her down. So that's the difference and that renders him not guilty? That should be the argument? No, that... I swung the hammer at her, I wanted her to stop yelling and, gee, she got hurt. Hey, how'd that happen? No, again, Your Honor, I don't have to prove to you that he would have been found not guilty beyond a reasonable doubt. I have to prove to you that his statement and his testimony did not include the element that... Well, the question is, what difference could it make and how does it matter if he... And I know it's a different scenario, but would it be... And you seem to be saying it would be equally improper in the scenario where the guy takes a hammer and hits her. I didn't intend to hurt her, but I did all that. It would be equally improper to concede his guilt there and to argue against... Yes, our prejudice argument is much... Because I pled not guilty and to focus attention on the attempted criminal sexual assault. Please allow me, Your Honor. I see what you're saying. He's saying, I didn't intend to hurt her. And, of course, there's a big difference between hitting someone in the head with a hammer and saying, oh, I didn't intend that it was going to injure her. Well, you know when you hit someone in the head with a hammer you're going to cause an injury. But there is an appreciable difference between putting a pillow over someone's face in a certain way that causes them to not yell but also doesn't kill them. And she didn't die. There were no injuries. So it's not outside the realm of possibility that Isaiah, a 16-year-old kid, could have freaked out and just, be quiet, be quiet, I'm leaving, I'm leaving. That's what he was saying. And the victim was not injured. There was no hitting. He didn't do anything like that. She was able to talk. Sorry about all this. Ms. Brooks? Good morning, Your Honors. Allison Paige Brooks, appearing on behalf of the people. May I please support and counsel? First of all, this Court would have to overrule Belle v. Cone, which is something this Court obviously cannot do in order to find a presumption of prejudice under chronic because Belle v. Cone is clear about the fact that it's a difference in kind. The failure has to be complete. The failure to challenge the prosecution's case has to be complete. And here, because there was at least one charge that was defended and quite vigorously defended, then it's obvious that this is a case that has to be subjected to the strict standards of Strickland which requires the defendant to show prejudice. Now, because the defendant's claim is focusing on one of the aspects, the fact that his confession he claims does not contain all the elements of home invasion, well, specifically as to the mental state part of it, he did not explicitly say in his statement that he intentionally caused injury. That much is true. So in that sense, the defendant is, at least in that limited sense, the defendant is correct that his statement to police his confession did not explicitly contain every element necessary to convict him of home invasion beyond a reasonable doubt. However, because he did admit that he placed a pillow over the victim's head and face for up to four minutes, that's an admission to conduct. Conduct, of course, can give rise to an inference of intent. And under the Terrell case, courts will presume that the defendant intended the natural and probable consequences of his acts. It's not a momentary smothering with a pillow. It's up to four minutes according to the defense own statement. So in that situation, the trial court would easily infer that what he was trying to do was inflict injury in the form of, under the Rachel case, a restriction of breathing. Even without physical evidence of injury, obviously, observable evidence of injury, a person is, in fact, injured for purposes of home invasion through the momentary restriction of breathing, proper breathing. So, given the trial court's and the defense counsel's knowledge of that case, and the fact of what's necessary to be proved, and belief that the trial court is going to infer that his intent from the nature of the admitted conduct. Plus, the trial court could also consider that whether, in the trial court's view, I'm sorry, the defense counsel can consider, in the defense counsel's own view, that the victim was testifying credibly, and that the trial court, from the trial court's reactions, likely to believe the victim's testimony, and likely to disbelieve the defendant's statements. That's stuff that the defense attorney can anticipate in formulating what's the appropriate trial strategy to take. So this is not a case where the defendant has established in overcoming the strong presumption of reasonable professional assistance. The defendant has not established on this record that the defense attorney somehow misapprehended the elements of home invasion, and not understanding that an intentional infliction of injury was required. So, for that reason, there was strategic benefit here. The defendant just completely overlooks the fact that sex offender registration is the difference between the charges. Using this home invasion case, in which the evidence was very, very strong, and which the defendant was not at all likely to receive an acquittal on. I mean, especially if the defense wants to cite, well, in the sentencing context, the defense attorney knew what was going to happen because of this prior stipulated bench trial. Well, that also applies here in defense that the defendant would have known, the defense attorney would have known, that he was going to get convicted of the home invasion because of what happened in the stipulated bench trial. So, I mean, that argument goes both ways. So, that's something to be considered in assessing all of the facts and circumstances known to the defense attorney at the time of the decision to concede the charges made. Now, even if this was done without on-the-record consent, under the Darden case, that is not a reason to, the concession being without the defense consent, is not a reason to apply the chronic exception to the prejudice requirement. So, here, the claim is only lack of meaningful adversarial testing as to one charge. That's not sufficient to invoke the chronic exception to prejudice. The defendant also claims, well, he pleaded not guilty. Of course, he also testified, as well, as part of his argument, but I think part of the defense's emphasis is, well, he, the concession is in the face of a not guilty plea. But, however, in Florida v. Nixon recognizes that a plea of guilty is a waiver of proof, and it also entails waiver of appellate rights. Here, there was a transfer hearing ruling as part of the idea of entering a stipulated bench trial was to appeal, the first time around, was to appeal the transfer ruling. So, it is necessary to plead not guilty if that issue needs to be preserved for an appeal. And also, the fact is, a waiver of proof would be something. The prosecution wouldn't even have to bring the victim in to testify, for example, and the prosecution wouldn't be held to actual proof. So, there is a distinction here between going to a trial after pleading not guilty, putting the victim on the stand, making her testify, and then conceding guilt in the face of overwhelming evidence. That's not equivalent to a guilty plea. Even though this is an unusual situation, the defense says this is a unique case. And it is sort of really unique because of the distinction here involving the sex offender registration. It is an unusual case in which the concession is to a greater classification of offense, class X versus class 2, and because of the concurrent nature of the sentences, in terms of the sentencing context, solely there would be no practical benefit to achieving only an acquittal on the class 2 sex crime. However, because it is a sex offender case, it's something that we don't know because it's not in the record on appeal. So, this court's not going to be able to resolve this issue, except on prejudice grounds, as to the performance problem of Strickland, because we don't know whether the defendant was sitting here telling his defense attorney, concede the whole invasion, I don't care, I can do a class X sentence, I know it might be 20 years, but I don't want a sex offender registration over my head for the rest of my life. If that's what the defendant told his attorney, and we don't know whether that's what happened, then what the attorney did was reasonable. And the fact is, it's not on the record, so we just simply don't know, and we have to presume under Strickland that the counsel acted reasonably. With respect to the prejudice argument, the defense prejudice argument seems to be limited to his argument that the concession left the trial court no choice but to convict him. However, that is easily disposed of under the Nubez case, in which the defense counsel, in that case, pursued an invalid mercy killing defense. But still, the Supreme Court of Illinois said that it didn't matter. Even though the defense was invalid, it leaves the jury, in that case, whichever case it was, no choice but to convict because the defense is an invalid defense. Mercy killing is not a defense of murder. However, they still held that defendant to a showing of prejudice. And because the evidence was overwhelming, he loses. And so simply making the claim that leaving no choice but to convict is not sufficient to meet the reasonable probability of the different results. So there has to be some reasonable doubt in the record sufficient to make this court undermine confidence in the verdict as to whether he intended to injure her when he put a pillow over her face for up to four minutes. And when he says in his statement, he denied an intention to hurt her, but he admitted that he did this because he didn't want her to scream. And by keeping her from screaming, it's stopping her from breathing. So it really goes it's really tied together. So, and in fact, also this court can consider what the trial court ruled in because it is on the record when the trial court says that the trial court disbelieves the defendant's story, essentially what happened here is the trial court disbelieved the self-serving part of the defendant's confession and statement. And believed what the victim said that what the defendant wanted was was a sexual encounter with the victim. That's what the defendant wanted. So it's a very strong case in terms of whether the defendant, what he was trying to accomplish, he was trying to obtain submission of the victim and in doing so inflicted injury on her. And so for those reasons defendant meets neither fond of the Strickland test and conviction of home invasion should be affirmed. What about this sentencing question? You seem to be arguing in your brief that the additional sentence, 22 years as opposed to 20 years, can be justified on the basis of the defendant's record in prison? Yes, that's correct. Does the record need to show that that that was the factor considered by the trial court in so concluding? And if so does the record show that's what the trial court said in this case? I don't know the answer to either one. It's in the record that he had the prison disciplinary ticket problems and that shows a lack of institutional adjustment and also because one of these is considered to be an assault or battery by the Department of Corrections even though it involves simply throwing a ping pong ball in another inmate's head that still shows a propensity towards violence. Well, there's a specific statute involved here that the corrections code that prohibits the more serious sentence unless the more severe sentence is in these circumstances based upon conduct on the part of the defendant occurring after the original sentence. We're all trial judge alumni on this panel and it seems to me that this should put a burden upon the trial judge if you're going to put on a greater sentence and thereby comply with the statute. You have to explain why. It's almost as if it seems to be fortuitous that after the fact there's some reference that this guy was a bad prisoner and causing difficulty. Should there be some explanation of some kind by the trial judge given this guy 22 years because of what he did in prison? That would be preferable except this court has to presume that the judge knew and applied the law. Unless the record shows otherwise the judge is presumed to know the limitations on increase in sentence and then because the record does show that he did have conduct after this first sentencing that entitles the judge to But the trial judge basically explained why he gave him 22 years. He comes out and says on the record, I don't know what Judge Reinert heard, but I heard this case and I'm going to give him 22. Based on he was standing in a bedroom it didn't really have anything to do with the disciplinary record. Well I don't, I'm trying to remember if the statute required, I don't know. Well there's some reference, the judge made some reference at the end of his remarks, but to what extent should we be concerned about the remarks of the judge that Justice Pope just made reference to? Well, other than the issue was whether the statute requires on the record finding as to whether the judge is applying the statute in this manner I think that the remarks then would go to the issue of whether this court would find that the presumption is rebutted that the judge knew and applied the law correctly. That's essentially what would  That would be the defense burn the brief and argue that issue and present that argument to this court to resolve in that manner. Of course the sentence is not an otherwise abuse of discretion because this is such a very serious crime and the judge did take full account of the fact that he was a useful offender but considered him to be a sophisticated predator and cited the need to deter these sorts of crimes and invading a woman's home at night while she's sleeping and trying to rape her is a very, very serious crime for which the community needs to be protected and that totally justifies the sentence that was imposed I'm having a little difficulty in your characterization of the defendant as a sophisticated criminal 16 year olds in my experience aren't particularly sophisticated as anything I understand, but the judge made findings that his actions were sophisticated he removed the light bulbs he had been in residences ahead of the offenses so he did things that showed premeditation and planning and the judge used the word sophisticated, so that's why the judge sought him not to be a typical 16 year old rather than a typical teenager With respect to transfer hearing, I'd just like to make a brief comment that it makes a huge difference in this argument because the fact that the defendant was alleged to be 15 years or older and the home invasion was a Class X felony other than armed violence. This is a presumptive transfer case, so therefore it's a burden on the defendant to prove by clear and convincing evidence that he should remain in juvenile court Lacking that evidence as to other treatment facilities the judge made the correct finding the judge did consider the factor but found that evidence to be lacking so for those reasons the state requests this court to affirm. Thank you, Your Honors Thank you, Mr. Brooks. Mr. Sieve, any rebuttal? Your Honors, for all the reasons that counsel pointed out to why a 22 year sentence was appropriate those are the same reasons why counsel was ineffective for conceding his client's guilt to home invasion This was a serious offense If this court finds that counsel's actions were reasonable I'm not aware of another case where a court has said that it's okay for counsel to concede his client's guilt to a much more serious offense to the one that he contested at trial especially where the defendant has testified on his own behalf at the trial If it's okay for attorneys to do this, for defense attorneys to do this, to just concede guilt for some other smaller benefit, I mean we're comparing sex registration to 22 years in prison for a kid who's been in jail since he was 16 I think there's a marked difference between those two. Again, sex registration that's not fun, but it's a collateral consequence of the conviction. It's a lot different than a 22 year prison sentence Counsel also argues that the record doesn't show, perhaps Isaiah changed his mind after he testified and said you know what, I want to give up on the home invasion charge because I think the judge might find me more credible if I do that and you can contest the attempt to criminal sexual assault. I mean, that's just kind of grabbing at straws. There's no if that's the case, then defense counsel had a duty to put that on the record and again there should have been admonishments again, this is a 16 year old and again we can't ignore what happened to him the first time the first time his attorney did a similar thing except via stipulation instead of giving up after closing argument, or during closing argument this court should find in this particular, I'm not asking this court to make any exceptional case overruling the case regarding chronic. You can apply Strickland and still find that counsel was unreasonable for abandoning his client and ceding his guilt to a Class X home invasion charge where he knew his client was going to get at least 20 years in prison for that offense. Thank you, Your Honor. Thank you, Mr. Seif. We'll take this matter under advisement and stand in recess.